**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| FENG XIAOMEI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23cv268 (TSE/WEF) |
| | ) | |
| KAIPING MAFA TRADING CO., LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

This trademark dispute is before the court on plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 55(b)(2). (Dkt. 16). In this action, plaintiff Feng Xiaomei ("plaintiff") seeks entry of default judgment against defendant Kaiping Mafa Trading Co., Ltd. ("defendant"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court these proposed findings of fact and recommendations, a copy of which will be provided to all interested parties. For the reasons set forth below, the undersigned recommends plaintiff's motion for default judgment be granted.[1]

---

[1] Relevant filings before the court include the Complaint (Dkt. 1) ("Compl."); Final Decision of the Trademark Trial and Appeal Board ("TTAB") issued on December 29, 2022 and filed as Exhibit A to the Complaint (Compl., Exh. A); Plaintiff's Motion for Alternative Means of Service of Process (Dkt 8); Memorandum of Law in Support of Plaintiff's Motion for Alternative Means of Service of Process (Dkt. 9); Order Granting Plaintiff's Motion for Alternative Means of Service of Process (Dkt. 11); Declaration of Clay Hester in Support of Plaintiff's Request for Entry of Default (Dkt. 14-1) ("Hester Decl."); Plaintiff's Motion for Default Judgment (Dkt. 16) ("Mot. Default J."); Plaintiff's Memorandum of Points and Authorities in Support of her Motion for Default Judgment (Dkt. 17) ("Mem. Supp. Default J."); Declaration of Feng Xiaomei (Dkts. 17-1–17-6) ("Xiaomei Decl."); Declaration of Bole Yuan (Dkt. 17-7) ("Yuan Decl."); and all attachments and exhibits submitted with those filings.

1

## PROCEDURAL HISTORY

By way of background, plaintiff is a Chinese citizen who is associated with two Chinese companies, Guangzhou Guangbo Internet Technology Co., Ltd. and Guangzhou Xinjiashi Internet Technology Co., Ltd. (collectively "plaintiff's corporate partners").   (Compl. ¶¶ 7, 17, 18). Defendant is a Chinese limited company.   (Compl. ¶ 8).   Plaintiff's corporate partners and defendant sell similar products under the word mark "DGSL."  (Compl. ¶¶ 19-21, 32-33; Compl. Exh. A, at 1, 2, 10-20).  The record reflects that neither plaintiff nor defendant maintain a physical presence in the United States.  Nevertheless, plaintiff's corporate partners and defendant sell their products to customers throughout the United States, including in the Commonwealth of Virginia, through various e-commerce platforms.  (Compl. ¶¶ 16, 20-28, 34-45; Compl. Exh. A, at 10-20). Plaintiff claims she is the sole owner of the DGSL word mark and that she "licensed her rights" to the DGSL mark only to her two corporate partners.  (Compl. ¶¶ 19, 20).

On September 11, 2020, defendant sought to register the DGSL mark with the United States Patent and Trademark Office ("USPTO").  (Compl. ¶ 32; Compl. Exh. A, at 1).  On March 4, 2021, plaintiff filed an opposition to defendant's application with the USPTO's Trademark Trial and Appeal Board ("TTAB").  (Compl. ¶ 11).  Plaintiff's opposition was filed pursuant to section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), which permits opposition on the basis of ownership of "a mark or trade name previously used in the United States . . . and not abandoned." (Compl. Exh. A, at 9).  Plaintiff and defendant submitted documents and written testimony in support their respective positions.  (Compl. ¶ 12).  During the TTAB proceedings, plaintiff was represented by her current counsel, Bole Yuan, Esquire, and defendant was represented by Haoyi Chen, Esquire.  (Compl. Exh. A, at 1).  The central issue before the TTAB was which party had priority over the DGSL mark, meaning which party first used the DGSL mark in commerce.

(Compl. Exh. A, at 9).  On December 29, 2022, the TTAB ruled that defendant had priority over the DGSL mark and dismissed plaintiff's opposition to defendant's pending trademark application. (Compl. ¶ 15; Compl. Exh. A).

On February 28, 2023, plaintiff brought this action seeking *de novo* review of the TTAB's decision pursuant to 15 U.S.C. § 1071(b) and reversal and vacatur of the TTAB's decision and an order granting ownership of the DGSL mark to plaintiff in connection to the sale of goods similar to those sold by plaintiff and her corporate partners.  (Compl. ¶¶ 1-57, Prayer for Relief ¶¶ 1, 2). In her complaint, plaintiff also alleges unfair competition and false designation of origin in violation of Section 43 of the Trademark Act, 15 U.S.C. § 1125(a) (Compl. ¶¶ 58-67), as well as Virginia common law violations of trademark infringement (Compl. ¶¶ 68-71) and unfair competition (Compl. ¶¶ 72-75).  Finally, plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that plaintiff's DGSL mark is valid and enforceable.  (Compl. ¶¶ 76-82).

On March 13, 2023, plaintiff filed a motion pursuant to 15 U.S.C. § 1071(b)(4) seeking authorization for an alternative means of service of process.  (Dkt. 8).  Section 1071(b)(4) provides that "adverse parties residing in foreign countries may be served by publication or otherwise as the court directs."   Here, plaintiff requested authorization to serve an electronic copy of the summons and the complaint upon Haoyi Chen, Esquire ("Mr. Chen"), counsel for defendant who is located in the United States, works for a large domestic law firm, and who represented defendant in the TTAB proceedings that are the subject of this *de novo* review.  *Id*.  On March 16, 2023, the undersigned granted plaintiff's motion finding that service upon Mr. Chen by email and first-class mail was "reasonably calculated to give notice of this action to [d]efendant, a business entity registered and doing business in China."  (Dkt. 11).  On March 17, 2023, plaintiff's counsel filed a declaration with the Court stating that he served copies of the complaint, summons and order

(Dkts. 1, 4, 11) on Mr. Chen at three email addresses, including Mr. Chen's law firm email address, and by first-class mail to Mr. Chen's law firm addresses in Chicago, Illinois and Houston, Texas. (Dkt. 12).  On March 28, 2023, counsel for plaintiff received an email reply from Mr. Chen in which Mr. Chen stated that he did not represent the defendant in the instant action.  (Yuan Decl. ¶ 5).  Mr. Chen's email was in reply to the March 17, 2023 service of process email.  *Id*.  Also, on March 28, 2023, plaintiff spoke by telephone with Jinli Zhong ("Mr. Zhong"), the corporate representative of defendant, at which time Mr. Zhong confirmed that he had received plaintiff's March 17, 2023 service of process email from Mr. Chen.[2]  (Yuan Decl. ¶ 6).  Finally, on April 11, 2023, plaintiff's counsel spoke by video conference with Mr. Zhong at which time Mr. Zhong again confirmed that defendant had received the March 17, 2023 email containing service of process, stated that defendant will not retain an attorney to defend this action, and provided counsel his email address to receive any future service of process.  (Yuan Decl. ¶ 7).

On April 18, 2023, the District Judge entered an order directing plaintiff to seek an entry of default from the Clerk of the Court pursuant to Federal Rule of Civil Procedure 55(a) and to file thereafter a motion for default judgment and a notice of hearing for May 19, 2023 at 10:00 a.m. (Dkt. 13).  On April 19, 2023, plaintiff filed a request for entry of default as to defendant, (Dkt. 14), and default was entered on April 28, 2023.  (Dkt. 15).  On May 5, 2023, plaintiff filed the instant motion for default judgment, a memorandum in support, and a notice of hearing for May 19, 2023. (Dkts. 16, 17, 18).  Plaintiff's counsel served the motion for default judgment on defendant's former counsel, Mr. Chen, as well as on Mr. Zhong at the email address Mr. Zhong previously provided to counsel for the purpose of accepting process on behalf of defendant.  (Dkt.

---

[2] Mr. Zhong was also identified as defendant's corporate representative in the TTAB Opinion and provided a declaration on behalf of defendant during the TTAB proceedings. (Compl., Exh. A, at 4).

16; Yuan Decl. ¶ 7).  At the hearing on May 19, 2023, counsel for plaintiff appeared, but no person appeared on behalf of defendant.

## FACTUAL BACKGROUND

The following facts are established in the complaint.  (Dkt.1).

### A.  Plaintiff's Use of the DGSL Mark and its Federal Trademark Application

Plaintiff Feng Xiaomei is an individual citizen of China who engages in the online marketing and sale of "various tools and home improvement products, including weatherstrippings, rubber installations, rubber seals, and tapes" ("plaintiff's products") via e-commerce sites, such as amazon.com, to consumers in the United States.  (Compl. ¶ 16).  Plaintiff is associated with two Chinese companies, Guangzhou Guangbo and Guangzhou Xinjiashi, in which plaintiff is responsible for the online listing and marketing of plaintiff's products under the word mark DGSL ("plaintiff's DGSL mark").  (Compl. ¶¶ 17-19).  Plaintiff is the owner of the entire right, title, and interest in and to plaintiff's DGSL mark, together with the goodwill associated with the mark.  (Compl. ¶ 19).  Plaintiff licensed her rights in plaintiff's DGSL mark to plaintiff's corporate partners for the purpose of operating two online stores known as "DGSL-us-store" and "Sealcare" on amazon.com, which market and sell plaintiff's products under plaintiff's DGSL mark to consumers in the United States.  (Compl. ¶ 20-21).

Beginning at least as early as October 2018, plaintiff used the DGSL mark in connection with her products by creating an amazon.com webpage for a DGSL-branded U-shaped garage door weatherproof seal product.  (Compl. ¶ 22).  Plaintiff made her first sale to a consumer in the United States for the DGSL-branded U-shaped garage door weatherproof seal product on December 4, 2018.  (Compl. ¶ 23).  After successfully selling plaintiff's DGSL-branded products online, plaintiff "created more than 50 Amazon product listing pages" and identified "DGSL" as the brand

name of plaintiff's products.  (Compl. ¶ 24-25).  Plaintiff has invested a substantial amount of money to promote her DGSL Amazon product listing pages and has "garnered significant consumer recognition on amazon.com and substantial goodwill nationwide."  (Compl. ¶ 26-28).  In fact, one of plaintiff's garage door seal and weatherstripping products is ranked first in sales on amazon.com in the "Weatherproofing Garage Door Seals" product category and 1,406 in the general "Tools & Home Improvement" category.  (Compl. ¶ 29).

On December 31, 2020, plaintiff applied to register plaintiff's DGSL mark for "raw or semi-worked rubber; rubber tubes and pipes; sealing and insulating materials; self-adhesive tapes, other stationery and not for medical or household purposes; weatherstripping for use in automobiles, homes" in International Class 17 (Ser. No. 90/442,495) ("plaintiff's DGSL application").  (Compl. ¶ 30).  On July 6, 2021, the USPTO issued an Office Action suspending plaintiff's DGSL application based on a likelihood of confusion with defendant's DGSL application (Ser. No. 90/173,270), which was filed prior to plaintiff's DGSL application.  (Compl. ¶¶ 31, 32).  As a result, plaintiff initiated a trademark opposition proceeding on March 4, 2021 against defendant's DGSL application based on her prior common law use of the identical mark for the same types of goods, captioned *Feng Xiaomei v. Kaiping MAFA Trading Co., Ltd*. Opp. No. 91267993 (the "opposition proceeding").  (Compl. ¶¶ 1, 11; Exh. A, at 8-12).

**B.  Defendant's DGSL Trademark Application and Alleged Evidence of Use**

Defendant's DGSL application was filed on September 11, 2020 and was published for opposition on March 2, 2021.  (Compl. ¶ 32).  In defendant's DGSL application, defendant claimed October 7, 2017 as its date of first use and first use in commerce.  (Compl. ¶ 33).  To prove use in commerce, defendant submitted screenshots of an online product listing page on aliexpress.com, with a URL of <https://www.aliexpress.com/item/1005001370515947.html>, as the specimen of

use for its trademark application.  (Compl. ¶ 34).  Plaintiff alleges that defendant's product listing page submitted as a specimen was actually first created on August 31, 2020, which was a few days prior to defendant filing its trademark application for DGSL and therefore cannot support defendant's claimed first use date of October 7, 2017.  (Compl. ¶ 35-36).

During the opposition proceeding, plaintiff and defendant introduced their trial testimonies during the testimony period in the form of signed declarations and supporting evidence.  (Compl. ¶ 11-12).  Plaintiff filed her trial brief on July 22, 2022; however, defendant did not submit a trial brief.  (Compl. ¶ 13).

Defendant's corporate representative, Mr. Zhong, declared under penalty of perjury that "[s]ince 2017, [defendant] maintains webpages on bowsen.net for the purpose of selling and offering for sale products under [the DGSL] [m]ark."  (Compl. ¶ 37).  Defendant further identified multiple webpages as defendant's evidence of use of the DGSL mark on bowsen.net.  (*See* Compl. ¶ 38).  Defendant also "introduced 123 pages of unnumbered documents . . . and declared that they contain 'consumer reviews and sale records of [it's] products under [defendant's mark].'"  (Compl. ¶ 39).  Plaintiff asserts that the only documents introduced by defendant appearing to display these "customer reviews" are printouts of the webpages bearing the same URLs as the defendant's bowsen.net product listing pages.  (Compl. ¶ 40).  Additionally, plaintiff's research during the opposition proceeding revealed that "at least eight 'customer reviews' displayed on defendant's bowesn.net product listing pages [] are exact copies of earlier and existing customer reviews of Amazon-verified third-party online product purchases."  (Compl. ¶ 41).  Plaintiff introduced this evidence during the opposition proceeding to show that the alleged "customer reviews" submitted by defendant were fraudulent reviews copied from third-party sources.  (Compl. ¶ 42).  Defendant also introduced twenty-one partially redacted digital invoices dated between September 16, 2017

and October 30, 2017 to allegedly establish "sales orders placed through [d]efendant's bowsen.net" product listing pages.  (Compl. ¶ 44).

### C.  The TTAB Opposition Proceeding

On September 22, 2022, the case was submitted to the TTAB Board (the "Board") for a final decision (Compl. ¶ 14).  On December 29, 2022, the Board issued its decision dismissing the action and allowing defendant to proceed with its application for the DGSL mark for "[r]aw or semi-worked rubber; [r]ubber tubes and pipes; [s]ealing and insulating materials; [s]elf-adhesive tapes, other than stationary and not for medical or household purposes; [w]eatherstripping for use in automobiles, homes" in Class 17 because plaintiff had failed to establish priority (the "final decision").  (Compl. ¶ 15; Compl., Exh. A, at 21).  For purposes of priority, the Board found that plaintiff first used the DGSL mark in commerce in connection with weather stripping for garage doors—goods that overlap with and are encompassed by defendant's "[w]eatherstripping for use in automobiles, homes"—on December 4, 2018.  (Compl., Exh. A, at 12).  Based on the invoices provided by defendant, the Board found that defendant's "earliest date of use of the mark in commerce in connection with weatherstripping appears to be September 16, 2017, which precedes [plaintiff's] earliest date of first use of its DGSL mark in connection with such goods on December 4, 2018."  (Compl., Exh. A, at 13-15).

Specifically, the Board found that the plaintiff did not "challenge the probative value of the *invoices* provided by [defendant], which appear to demonstrate clear evidence of [defendant's] prior use."  (Compl., Exh. A, at 15) (emphasis added).  Instead, the Board concluded that the plaintiff only challenged the validity of defendant's bowsen.net evidence, which the Board found to be "insufficient information and evidence connecting [defendant's] alleged use of fake reviews to bolster the sales of its goods to the validity of the [twenty-one] invoices Mr. Zhong presented

during his testimony showing ongoing sales of [defendant's] DGSL goods between September 16, 2017 and October 30, 2017." (Compl., Exh. A, at 15, 19).

### D.  Plaintiff's Alleged New Evidence Establishing Lack of Legitimate Use

After the Board issued its final decision, "new evidence came into light showing that [d]efendant's bowsen.net product listing pages were in fact created after plaintiff initiated the opposition proceeding." (Compl. ¶ 43).  Specifically, while defendant had introduced twenty-one partially redacted digital invoices between September 16, 2017 and October 30, 2017 purporting to show sales orders placed through defendant's bowsen.net product listing pages, plaintiff alleges that records from the Wayback Machine[3] demonstrate that defendant's bowsen.net website was not even created as of November 2, 2018.  (Compl. ¶ 45).  Plaintiff further alleges that there is "no record of [d]efendant's [b]owsen.net [p]roduct [l]isting [p]ages existing anywhere until December 21, 2021, after the closure of discovery of the opposition proceeding."[4]  (Compl. ¶ 46).  Since the defendant's bowsen.net website was not even created as of November 2, 2018, and the earliest published copy of the bowsen.net listing pages displaying the DGSL mark dates back to only December of 2021, it would be impossible – as defendant claimed – for customers to place sales orders through the bowsen.net website between September 16, 2017 and October 30, 2017.  Based on this new evidence as well as the evidence plaintiff previously submitted in the opposition

---

[3] The Wayback Machine is a digital archive of the World Wide Web founded by the Internet Archive, a nonprofit organization.  The Wayback Machine captures internet activity as of a certain date.  *See* https://archive.org.

[4] In Plaintiff's Memorandum of Points and Authorities in Support of her Motion for Default Judgment (Dkt. 17), plaintiff states that the purported product listing pages on bowsen.net bearing the DGSL mark did not exist until December 16, 2021, as opposed to December 21, 2021 as alleged in the complaint.  (*See also* Xiaomei Decl. ¶¶ 17-32).  The discrepancy is immaterial.  For purposes of this motion, the undersigned's recommendation would not change regardless of whether the date is December 16, 2021 or December 21, 2021.  For purposes of this analysis, the undersigned will consider the relevant date to be December 2021, without reference to a specific day.

proceeding, plaintiff reasonably alleges that defendant fabricated its bowsen.net product pages and invoices "for the sole purpose of establishing [d]efendant's prior use of the DGSL mark." (Compl. ¶¶ 47-48).

**PROPOSED FINDINGS AND RECOMMENDATIONS**

FRCP 55 provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A defendant in default admits the factual allegations in the complaint. *See* FRCP 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted.) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Before entering default judgment, however, the court must evaluate the plaintiff's complaint against the standards of FRCP 12(b)(6) to ensure that the complaint properly states a claim. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

The undersigned will accordingly consider plaintiff's motion for default judgment as to her (1) request for judicial review of the TTAB decision under 15 U.S.C. § 1071(b); and as to the additional claims against defendant, including: (2) unfair competition and false designation of origin under 15 U.S.C. § 1125(a); (3) Virginia common law trademark infringement; (4) Virginia common law unfair competition; and (5) the declaratory judgment request under 28 U.S.C. § 2201. First, however, the undersigned will address whether jurisdiction rests with this court and whether venue is proper in this district.

**Jurisdiction and Venue**

A court must have both subject matter jurisdiction and personal jurisdiction over a defaulting party before it can render a default judgment.  This court has subject matter jurisdiction over an appeal from a TTAB decision under 15 U.S.C. § 1071(b), which provides that in a review of a TTAB decision, if the adverse party is "residing in a foreign country, the United States District Court for the Eastern District of Virginia shall have jurisdiction."  15 U.S.C. § 1071(b)(4).  Defendant, as noted earlier, is a Chinese limited company.  (Compl. ¶ 8).  This court has subject matter jurisdiction over the Lanham Act violations under 28 U.S.C. §§ 1331 and 1338(a) because this claim involves a federal question and arises under an Act relating to trademarks.  This court has supplemental subject matter jurisdiction over plaintiff's Virginia common law claims pursuant to 28 U.S.C. § 1367(a), as the state law claims are "part of the same case or controversy" with the federal claims for which this court has original jurisdiction.  Finally, this court has subject matter jurisdiction over plaintiff's declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., which allows federal courts to issue declaratory judgments in cases that (i) meet the constitutional case or controversy requirements and also (ii) present a valid basis for subject matter jurisdiction, *i.e.*, diversity or federal question jurisdiction.  *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 826 (E.D. Va. 2001).  The undersigned finds that both requirements have been satisfied by the properly plead allegations in the complaint, and for the reasons set forth below, recommends that plaintiff is entitled to a declaratory judgment.

15 U.S.C. § 1071(b) also confers upon this court personal jurisdiction over defendant with respect to the judicial review of the TTAB decision.  As to the remaining claims, this court has recognized that "[b]ecause personal jurisdiction exists with respect to the § 1071 TTAB appeal, it is appropriate to exercise pendent personal jurisdiction over defendant with respect to plaintiff's

additional claims if those arise out of a common nucleus of operative fact as the § 1071 TTAB appeal." *Combe Inc. v. Dr. August Wolff GmbH & Co. KG Arzneimittel*, 283 F. Supp. 3d 519, 523 (E.D. Va. 2017). Here, the TTAB appeal is based, at least in part, on new factual allegations tending to show that defendant provided fictitious documents during the TTAB opposition proceeding to establish a claim of priority over plaintiff's use of the DGSL mark, which ultimately prevented plaintiff from successfully opposing defendant's pending trademark application based on a likelihood of confusion. Plaintiff's federal and state law unfair competition claims arise out of the same set of operative facts, namely, that plaintiff is the senior user of the DGSL mark and has priority over defendant's use of the DGSL mark, and that considering this finding, defendant's mark would likely cause confusion, mistake, or deception as to the source of origin of defendant and its products. Thus, because plaintiff's unfair competition claims arise out of the same common nucleus of operative fact as a claim over which personal jurisdiction exists—the § 1071 TTAB appeal—it is also appropriate to exercise pendent personal jurisdiction and consider the federal and state law claims for unfair competition together. *Id*. at 524. Finally, venue is proper pursuant to 28 U.S.C. § 1391(b)(3), (c)(3) because defendant is a resident of a foreign country and is subject to this court's personal jurisdiction.

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over defendant, and that venue is proper in this district.

### Service of Process

In order to enter default judgment, the court must find that plaintiff properly served process on defendant. On March 13, 2023, plaintiff filed a motion seeking authorization for an alternative means of service of process. (Dkt. 8). In her motion, plaintiff argued that both the Lanham Act

and the Federal Rules of Civil Procedure permitted the court to order alternative means of service on defendant due to defendant's status as a foreign entity with a principal place of business outside the United States.  (Dkts. 8, 9).  Specifically, 15 U.S.C. § 1071(b) provides that in a TTAB review such as this, where the adverse party resides in a foreign country, parties "may be served by publication *or otherwise as the court directs*."   15 U.S.C. § 1071(b)(4) (emphasis added). Furthermore, under Federal Rule of Civil Procedure 4, a defendant in a foreign country may be served "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3); Fed. R. Civ. P. 4(h)(2).   Plaintiff proposed to serve an electronic copy of the summons and the complaint upon Haoyi Chen, Esquire, counsel for defendant who is located in the United States, works for a large domestic law firm, and who represented defendant in the TTAB proceedings that are the subject of this *de novo* review.  (Dkt. 9, at 2-3).  Notably, Mr. Chen had accepted service of process on behalf of defendant at these email addresses during the opposition proceeding before the TTAB involving the same parties.  *Id*.

On March 16, 2023, the undersigned granted plaintiff's motion finding that service upon Mr. Chen by email and first-class mail was "reasonably calculated to give notice of this action to [d]efendant, a business entity registered and doing business in China."  (Dkt. 11); *see Enovative Technologies, LLC v. Leor*, 622 Fed. Appx. 212, 214 (4th Cir. 2015) ("In order to fulfill due process requirements under Rule 4(f)(3), a court must approve a method of service that is "reasonably calculated under all the circumstances" to give notice to defendant.") (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)).  The Court's March 16 Order also required Plaintiff to file an affidavit of service regarding the steps taken pursuant to the court's order.  (Dkt. 11).

On March 17, 2023, plaintiff's counsel filed a declaration with the court stating that he

served copies of the complaint, summons and order (Dkts. 1, 4, 11) on Mr. Chen at three email addresses, including Mr. Chen's law firm email address, and by first-class mail to Mr. Chen's law firm addresses in Chicago, Illinois and Houston, Texas.  (Dkt. 12).

The record further establishes that the procedures ordered by the court were effective in providing defendant with actual notice of this action.  On March 28, 2023, counsel for plaintiff received an email reply from Mr. Chen in which Mr. Chen stated that he did not represent the defendant in the instant proceeding.  (Yuan Decl. ¶ 5).  Mr. Chen's email was in reply to the March 17, 2023 service of process email.  *Id.*  Also, on March 28, 2023, plaintiff spoke by telephone with Mr. Zhong, the corporate representative of defendant, at which time Mr. Zhong confirmed that he had received plaintiff's March 17, 2023 service of process email from Mr. Chen.  (Yuan Decl. ¶ 6).  Finally, on April 11, 2023, plaintiff's counsel spoke by video conference with Mr. Zhong at which time Mr. Zhong again confirmed that defendant had received the March 17, 2023 email containing service of process, stated that defendant will not retain an attorney to defend this action, and provided counsel his email address to receive any future service of process.  (Yuan Decl. ¶ 7).

Therefore, the undersigned recommends the court find that plaintiff properly effected service of process on defendant through alternative means, pursuant to court order, under 15 U.S.C. § 1071(b) and the Federal Rule of Civil Procedure 4.

## GROUNDS FOR ENTRY OF DEFAULT

In accordance with FRCP 12(a), defendant was required to file a responsive pleading no later than April 7, 2023, twenty-one days after defendant was served by email pursuant to the court's March 16, 2023 order (Dkt. 11).  No responsive pleading has been filed by defendant, and the time for doing so has expired.  On April 19, 2023, plaintiff filed a request for entry of default as to defendant (Dkt. 14), and default was entered by the Clerk of the Court on April 28, 2023.

(Dkt. 15).  Accordingly, the undersigned magistrate judge recommends a finding that defendant failed to file a responsive pleading in a timely manner, and that the Clerk of Court properly entered a default as to defendant.

On May 5, 2023, plaintiff filed the instant motion for default judgment, a memorandum in support, and a notice of hearing for May 19, 2023. (Dkts. 16, 17, 18).  Plaintiff's counsel served the motion for default judgment on defendant's former counsel, Mr. Chen, as well as on Mr. Zhong at the email address Mr. Zhong previously provided to counsel for the purpose of accepting process on behalf of defendant.  (Dkt. 16; Yuan Decl. ¶ 7).  At the hearing on May 19, 2023, counsel for plaintiff appeared, but no person appeared on behalf of defendant.  For the reasons set forth below, the undersigned magistrate judge finds the factual allegations in the complaint satisfy the standards of FRCP 12(b)(6) and therefore recommends the court grant plaintiff's motion for default judgment as to all causes.

**Request for Judicial Review of the TTAB Decision**
**(First Claim)**

Plaintiff seeks *de novo* review of the TTAB's findings in *Feng Xiaomei v. Kaiping MAFA Trading Co., Ltd*., Opp. No. 91267993 (T.T.A.B. Dec. 29, 2022) and an order reversing and vacating the Board's final decision.  (Compl. ¶ 50-57).  The Board held that plaintiff did not have priority of use of the DGSL mark in connection with overlapping goods sold by the parties, and therefore, could not oppose defendant's pending application under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).  (Compl., Exh. A).  Thus, the Board dismissed the opposition proceeding before reaching a decision on whether the marks were confusingly similar.

### A. Timeliness of Plaintiff's Complaint

As a threshold matter, the undersigned finds plaintiff's complaint was timely filed.  A plaintiff may file a § 1071(b)(1) complaint within sixty-three (63) days of a final decision of the

TTAB.  15 U.S.C. § 1071(b)(1); 37 C.F.R. § 2.145(d)(3);  *see also Apple, Inc. v. Cao*, No. 1:21CV1003 (TSE/JFA), 2022 WL 18781189, at *3 n. 3 (E.D. Va. Jan. 14, 2022).  Plaintiff filed this action on February 28, 2023, sixty-one (61) days after the TTAB's final decision in *Feng Xiaomei v. Kaiping MAFA Trading Co., Ltd.*, Opp. No. 91267993 (T.T.A.B. Dec. 29, 2022).

### B.  Entitlement to Statutory Cause of Action

The undersigned further finds that plaintiff is entitled to a statutory cause of action to oppose defendant's DGSL application and appeal the Board's decision.  15 U.S.C. § 1063 allows "[a]ny person who believes that he would be damaged by the registration of a mark" to file an opposition.  *See, e.g., Apple, Inc. v. Cao*, C.A. No. 1:21-cv-1003 (TSE/JFA), 2022 WL 18781189, *4 (E.D. Va. Jan. 14, 2022).  Plaintiff has been using the DGSL mark in connection with products related to those identified in defendant's DGSL application prior to and in direct competition with defendant.  (Compl. ¶ 52).  Plaintiff also filed the pending application for the DGSL mark that "is currently suspended for likelihood of confusion with [d]efendant's DGSL [a]pplication."  *Id*.  As such, plaintiff has "a real interest falling within the zone of interests protected by the Trademark Act and a reasonable belief of damage proximately caused by the registration of [d]efendant's [a]lleged [m]ark."  *Id*.  Thus, plaintiff has demonstrated standing, or entitlement to a statutory cause of action, to bring the opposition proceeding before the TTAB which necessarily establishes sufficient interest in an appeal or review of the TTAB's decision.  *See Pro-Football, Inc. v. Blackhorse*, 62 F. Supp. 3d 498, 504 (E.D. Va. 2014) ("Sufficient standing before the TTAB requires the petitioner to demonstrate a real interest in the outcome of the case and a reasonable belief that the mark has caused or will cause damage to the petitioner.").

### C.  Standard of Review

Under 15 U.S.C. § 1071(b)(1), a party seeking review of a TTAB decision may file a new

action in the district court as an alternative to an appeal before the United States Court of Appeals for the Federal Circuit.  *See B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 144 (2015); *see also RXD Media, LLC v. IP Application Dev.*, 377 F. Supp. 3d 588, 592 (E.D. Va. 2019), *aff'd sub nom., RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361 (4th Cir. 2021) ("If a party to an opposition proceeding is dissatisfied with the result of a TTAB decision it may either appeal that decision to the Federal Circuit or commence a *de novo* civil action in a federal district court.").  In a § 1071(b)(1) action, the district court reviews the record *de novo* and may consider evidence not previously submitted to the TTAB.  *See Swatch AG v. Beehive Wholesale*, LLC, 739 F.3d 150, 155 (4th Cir. 2014).  If a party so moves, the district court must admit the PTO record, and the record shall have the same effect as if originally taken and produced in the suit.  *Id*. at 155; *see Apple, Inc. v. Cao*, n. 4 No. 1:21CV1003 (TSE/JFA), 2022 WL 18781189, at *4 n. 4 (E.D. Va. Jan. 14, 2022) ("In a § 1071(b) action, the PTO record need be admitted only on motion of a party.").

Plaintiff is entitled to *de novo* review of the facts regarding which party had priority of use of the DGSL mark.  The court's review, however, is somewhat limited because neither plaintiff nor defendant moved to admit the entire PTO record under 15 U.S.C. § 1071(b)(3).  Plaintiff attached the TTAB Board's final decision as an exhibit to its complaint, however, once defendant failed to respond to the complaint and default was entered, the underlying TTAB record was never admitted on motion by plaintiff.

While plaintiff did not admit the entire TTAB record, plaintiff does allege new facts in the complaint related to her claim of priority that were not previously presented to the Board.  For example, plaintiff alleges that defendant's bowsen.net product listing pages were created after plaintiff initiated the opposition proceeding.  In support of this claim, plaintiff states that records

from the Wayback Machine show that defendant's bowsen.net website was not published as of November 2, 2018, and that there is no record of defendant's bowsen.net product listing pages existing "anywhere until December 21, 2021, after the close of discovery of the opposition proceeding."  (Compl. ¶¶ 43-46).  Plaintiff alleges that this new evidence demonstrates that defendant fabricated its bowsen.net product listing pages and the digital invoices purporting to show sales through these listing pages in September and October of 2017 and did so in order to fraudulently establish its priority over the DGSL mark.  (Compl. ¶¶ 47-48).

Therefore, because plaintiff alleges new evidence that is directly related to her priority claim, she is entitled to *de novo* review by this court of the TTAB's decision.  *See Apple, Inc. v. Cao*, No. 1:21CV1003 (TSE/JFA), 2022 WL 18781189, at *4 (E.D. Va. Jan. 14, 2022) (finding that although its review was limited because no party had moved to admit the PTO record on default judgment, "*de novo* review of the facts supporting registration [was] further appropriate here because plaintiff assert[ed] it has presented new evidence to the district court that was not raised previously before the TTAB"); s*ee also Swatch AG*, 739 F.3d at 156 ("[W]here new evidence is submitted, *de novo* review of the entire record is required because the district court cannot meaningfully defer to the PTO's factual findings if the PTO considered a different set of facts.") (internal quotation and citation omitted).  Thus, in reviewing *de novo* the TTAB decision, the court must rely on the well-pleaded factual allegations in the complaint, including plaintiff's new allegations, that are deemed admitted as a result of defendant's default.  Upon *de novo* review, the district court acts as the finder of fact and has independent authority to grant or cancel registration of a proposed mark.  *Apple, Inc.*, 2022 WL 18781189, at *3 (citing *Swatch AG*, 739 F.3d at 155) ("The district court has authority independent of the PTO to grant or cancel registrations and to decide any related matters such as infringement and unfair competition

claims.").

Finally, the filing of a new civil action under 15 U.S.C. § 1071(b)(1) also impacts which Circuit's precedent binds the trial court generally, and here, an appeal of this action goes to the Fourth Circuit, so Fourth Circuit law applies. *See Swatch AG v. Beehive Wholesale*, *LLC*, 888 F. Supp. 2d 738, 745 (E.D. Va. 2012) (citing *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.,* 517 F.Supp.2d 1, 6 (D.D.C. 2007) (circuit law applies to review of a TTAB decision under 15 U.S.C. § 1071(b)(1)).

### D.  Plaintiff's Claim of Priority of Use

Next, the undersigned addresses the merits of plaintiff's claim that she is the senior user, and thus has priority over defendant's use of the DGSL mark, which then would permit plaintiff to oppose defendant's DGSL application based on a likelihood of confusion.  Plaintiff filed the opposition proceeding based on her common law use of the DGSL mark in connection with plaintiff's products, which overlap with the goods listed in defendant's application.  Plaintiff alleges that she is the "senior user of the DGSL word mark with rights superior as compared to any right [d]efendant may have in the same . . . [and that] [r]egistration of [d]efendant's [a]lleged [m]ark is likely to cause confusion in violation of Section 2(d) of the Trademark Act."  (Compl. ¶¶ 55-56).

Section 2(d) of the Trademark Act, 15 U.S.C. 1052(d) allows opposition on the basis of ownership of "a mark or trade name previously used in the United States . . . and not abandoned." "Ownership rights to unregistered trademarks — the type of trademark at issue here — flow from two necessary conditions: (1) priority of use of (2) a valid, protectable mark." *Moke Am. LLC v. Am. Custom Golf Cars, Inc*., No. 3:20CV400 (DJN), 2023 WL 3232601, at *2 (E.D. Va. May 3, 2023) (citing *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 400 (4th Cir. 2009)).

Priority of use accrues to the individual or entity that first appropriates the mark for commercial gain. *Id.* ("The party asserting priority in a mark must be the first to use the mark in connection with the sale of goods or services, or, at a minimum, must demonstrate that it used the mark before the party against which it asserts its putative rights."); *see also Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003) ("At common law, trademark ownership is acquired by actual use of the mark in a given market."). If more than one user claims the exclusive right to use an unregistered trademark, priority is determined by the first actual use of the mark in a genuine commercial transaction. *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003) (internal quotation and citation omitted). Finally, ownership of a mark extends only to those markets in which the trademark has been used or its meaning has become known. *Prod. Source Int'l, LLC v. Nahshin*, 112 F. Supp. 3d 383, 393–94 (E.D. Va. 2015) (internal quotation and citation omitted).

In support of her claim of prior common law rights in the DGSL mark, plaintiff asserts that she first began using the DGSL mark in connection with her products "at least as early as October 23, 2018." (Compl. ¶ 22). Plaintiff created a product listing page, which was first made available on October 23, 2018, on amazon.com where she used the DGSL mark in connection with selling and promoting her garage door weather stripping product. (Mem. Supp. Default J., at 12; Xiaomei Decl. ¶ 40). Plaintiff sold her first DGSL-branded product through the product listing page to a customer in the United States on December 4, 2018. (Compl. ¶ 23). During plaintiff's testimony period in the opposition proceeding, plaintiff introduced her own declaration along with exhibits that show her use of the DGSL mark in commerce via amazon.com. (Compl., Exh A, at 11-12). Plaintiff also introduced documents that show sales orders and gross sales revenue for her DGSL-branded products. *Id.* Plaintiff's evidence demonstrates that she (1) continuously used the DGSL

mark in connection with the sale of overlapping products through her DGSL Amazon product listings page, (2) has invested a substantial amount of money in direct-to-consumer online advertising campaigns, and (3) has garnered significant consumer recognition nationwide on amazon.com.  (Compl. ¶ 26-29).

As previously noted, "priority of use accrues to the individual or entity that first appropriates the mark for commercial gain."  *Moke Am. LLC*, 2023 WL 3232601, at *2; *see also Emergency One, Inc.,* 332 F.3d at 267 ("At common law, trademark ownership is acquired by actual use of the mark in a given market.").  Further, "[r]ights in a trademark are determined by the date of the mark's first use in commerce."  *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419, 135 S. Ct. 907, 909, 190 L. Ed. 2d 800 (2015).  The party who first uses a mark in commerce is said to have priority over other users.  *Id*.  For purposes of infringement and unfair competition claims, the "use in commerce" requirement is met when a mark is (1) placed on the good or container, or on documents associated with the goods if the nature of the goods makes placement on the good or container impracticable, and (2) that good is then "sold or transported in commerce."  15 U.S.C. § 1127; *see also Combe Inc. v. Dr. Aug. Wolff GmbH & Co. KG Arzneimittel*, 309 F. Supp. 3d 414, 420-22 (E.D. Va. 2018).

Based on the facts asserted in the complaint and evidence submitted in the opposition proceeding, under Fourth Circuit law, plaintiff first used the mark in connection with the sale of goods, and thus in a genuine commercial transaction, on December 4, 2018, when plaintiff made her first sale to a customer in the United States.[5]  (Compl. ¶ 23).  While plaintiff contends that she

---

[5] Under Section 7 of the Trademark Act, 15 U.S.C. § 1057(c), parties are entitled to rely upon the filing date of the application for purposes of establishing constructive use.  Here, plaintiff's actual date of first use in commerce precedes plaintiff's constructive priority date of September 11, 2020—the date plaintiff's DGSL application was filed—and will be used as the relevant priority date.

first used the mark in connection with plaintiff's products as early as October 23, 2018, the undersigned finds that the first time plaintiff used the DGSL mark in connection with a commercial transaction is the operative date for priority purposes.[6]  Thus, after *de novo* review, the undersigned finds that plaintiff first used the DGSL mark in commerce in connection with weather stripping for garage doors, on December 4, 2018.  Notably, this is the same date used by the Board in its analysis. (Compl., Exh. A, at 12).   Further, plaintiff's nationwide use of the DGSL mark is continuous and has not been abandoned.  (Compl. ¶ 24-29; Xiaomei Decl. at ¶¶ 41-43; Mem. Supp. Default J., at 12).

### E.  Defendant's Alleged Evidence of Invoices to Establish Prior Use

In contrast, plaintiff argues that defendant has "[no] reliable evidence to support its purported earlier use of the DGSL mark." (Mem. Supp. Default J., at 12).  Defendant has claimed October 7, 2017 as its date of first use in commerce, which if true would predate plaintiff's December 4, 2018 first use of the mark.  (Compl. ¶ 33).  To support its claim, defendant relied exclusively upon "21 orders it purportedly received [beginning in 2017] through bowsen.net" for the alleged sale of DGSL-branded weatherstripping products. (*See* Compl. ¶ 44; Compl., Exh. A, at 21).[7]  Plaintiff, however, argues that defendant submitted fabricated invoices in an attempt to establish its use of the DGSL mark in 2017. (Mem. Supp. Default J., at 12-13). After *de novo*

---

[6] Regardless of whether the operative priority date is October 23, 2018 or December 4, 2018, for the reasons set forth below, the undersigned finds that either date would precede any actual use from defendant and would therefore establish plaintiff's prior rights in the DGSL mark.

[7] Even though the full TTAB record is not before the court, it is necessary to understand the arguments made by the parties during the opposition proceeding and reflected in the Board's final decision in order to understand the context of plaintiff's arguments and to evaluate what new evidence is now before the court.

review, including assessing the new evidence submitted by plaintiff, the undersigned finds the record supports plaintiff's claim that defendant's arguments were the product of unreliable documents and incredible claims.[8]

During the opposition proceeding, plaintiff did not directly address the validity of the defendant's twenty-one partially redacted digital invoices dated between September 16, 2017 and October 30, 2017.  Instead, plaintiff argued that all of the other indicia of fraud it identified was sufficient for the Board to conclude the invoices were fraudulent as well.  The Board, however, declined to draw this inference and found the unchallenged invoices "demonstrate clear evidence of [defendant's] prior use."  (Compl., Exh. A, at 15, 19, 21).  The invoices from bowsen.net – if genuine – would establish defendant's priority use of the DGSL mark.  *See, e.g.*, *Simply Wireless, Inc. v. T-Mobile US, Inc*., 638 F. Supp. 3d 644, 655 (E.D. Va. 2022) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.") (internal quotation and citation omitted).

However, in this action, plaintiff introduces new evidence that was not before the TTAB during the opposition proceeding that clearly demonstrates the falsity of defendant's invoices. Specifically, plaintiff presents new evidence that establishes defendant's bowsen.net webpage was not a published website as of November 2, 2018, and that in fact, the earliest published copy of defendant's bowsen.net site dates to December 2021.  (Compl. ¶¶ 45, 46; Xiaomei Decl. ¶ 27).

---

[8] During the opposition proceeding, defendant also submitted evidence purporting to show product offerings on e-commerce sites amazon.com, aliexpress.com, and bowsen.net, as well as customer reviews from bowsen.net.  This evidence was not offered in support of defendant's claimed 2017 first use date. (Compl., Exh. A, at 21).  But even if this evidence were relevant to the issue of priority, the undersigned finds these documents to be false and fraudulent and defendant's claims to be incredible for the reasons set forth in plaintiff's complaint at paragraphs 34 to 43.

Therefore, the invoices submitted by defendant could not have been produced in 2017.

Plaintiff used the Wayback Machine, "a digital archive of the World Wide Web that periodically captures and archives websites and allows users to view these archived copies of the websites later on," to establish that the bowsen.net product listing pages cited by defendant did not exist until December 2021.  (Compl. ¶ 46; Xiaomei Decl. ¶¶ 15, 27).  Further, snapshots of the Wayback Machine prove that out of the five bowsen.net product listing pages submitted by defendant in the opposition proceeding, only two out of the five were captured by the Wayback Machine and these two product listing pages were still only captured as of December 2021. (Xiaomei Decl. ¶ 28-32).  Based on the facts properly plead in the complaint, plaintiff puts forth sufficient evidence to prove that defendant's bowsen.net website, including the product listing pages, was not active or published until at least December 2021.  (Compl. ¶ 46; Xiaomei Decl. ¶ 27).  Since the earliest published copy of bowsen.net as captured by the Wayback Machine dates back to December 2021, it would be impossible for consumers to place orders through bowsen.net resulting in the twenty-one invoices dated between September 16, 2017 and October 30, 2017. Thus, the undersigned finds that defendant fabricated its bowsen.net product listing pages to include initial product launch dates predating plaintiff's first product launch dates, and more importantly, also fabricated the digital invoices showing sales placed through defendant's bowsen.net websites in 2017.  (Compl. ¶ 47-48).

For these reasons, the undersigned recommends a finding that plaintiff has priority in the DGSL mark in connection with plaintiff's products and that the Board's decision be reversed and vacated.  The Board never reached a decision as to whether defendant's DGSL mark was likely to cause confusion with plaintiff's DGSL mark under the *DuPont* factors, and therefore barred from registration under 15 U.S.C. § 1052(d).  *See In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357,

1361, 177 U.S.P.Q. 563, 567 (C.C.P.A. 1973). However, considering the undersigned's  finding that plaintiff is the senior user of the DGSL mark, the undersigned also finds for the reasons set forth below, that defendant's DGSL mark is likely to cause confusion under 15 U.S.C. § 1125(a) with plaintiff's DGSL mark.

### Unfair Competition under 15 U.S.C. § 1125(a)
### (Second Claim)

In addition to plaintiff's claim of priority over the DGSL mark and request for *de novo* review of the Board's final decision, plaintiff alleges in its second claim for relief that defendant engaged in unfair competition, sometimes referred to as "false designation," in violation of § 43(a) of the Lanham Act.  Lanham Act § 43(a), 15 U.S.C. § 1125(a).  Under 15 U.S.C. § 1125(a), "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

It is well established that stating a claim for unfair competition, *i.e.*, false designation, under this provision requires "essentially the same . . . elements for a trademark infringement claim under the Lanham Act." *Automobili Lamborghini S.p.A. v. Garcia*, 467 F. Supp. 3d 385, 404 (E.D. Va. June 16, 2020) (citing *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005)); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is

identical – is there a likelihood of confusion?") (internal citation and quotation marks omitted). Thus, the required elements for a Section 43(a) claim of unfair competition and false designation of origin are essentially the same as the elements for a claim of infringement of a registered trademark under the Lanham Act. *See Nationstar Mortg., LLC v. Ahmad*, 155 F. Supp. 3d 585, 592 (E.D. Va. 2015) (citing *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 300 (4th Cir.2012) (holding that "to prevail under . . . 43(a) of the Lanham Act for trademark infringement and unfair competition . . . a complainant must demonstrate that it has a valid, protectable trademark and that the defendant's use of a colorable imitation . . . is likely to cause confusion among consumers.").

To prevail on claims of unfair competition under the Lanham Act, plaintiff must first establish that she has a valid, protectable trademark. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006); *see also Moke America LLC v. American Custom Golf Cars, Inc.*, Civil No. 3:20cv400 (DJN), 2023 WL 3232601, at *2 (E.D. Va. May 3, 2023) ("a mark proves valid and thus protectable only where the mark possesses sufficient distinctiveness to perform the quintessential trademark function," that is to identify the source or origin of the marked product to the consumer). In the complaint, plaintiff has properly alleged and clearly established that she has a valid, protectable trademark that fulfills the trademark function of identifying the source of the products to the consumers. Plaintiff used the DGSL mark in connection with her products since at least as early as October 2018 when she first advertised her goods for sale on an Amazon product listing page. (Compl. ¶ 22). Plaintiff then sold her first DGSL-branded product in December 2018 and has since created more than fifty Amazon product listing pages identifying DGSL as the brand name. (Compl. ¶¶ 23-25). Plaintiff further alleges she has "achieved great commercial success through her use of [the] DGSL [m]ark, fulfilling thousands of orders nationwide." (Compl. ¶¶ 27,

28).   In fact, one of plaintiff's DGSL-branded garage door seal and weatherstripping products is ranked first in sales on amazon.com in the "Weatherproofing Garage Door Seals" product category.   (Compl. ¶ 29).

Next, plaintiff must demonstrate that the defendant's "use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Synergistic Int'l, LLC*, 470 F.3d at 162. Likelihood of confusion exists if the defendant's "actual practice is likely to produce confusion in the minds of consumers about the origin of the good or service in question." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004).   The Fourth Circuit has identified nine factors for the court to consider in determining the likelihood of confusion.   *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (first citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984); and then citing *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996)).   "Not all of these factors are of equal importance, 'nor are they always relevant in any given case.'"   *Id.* (quoting *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992)).   The factors are: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.   *See Pizzeria Uno Corp.*, 747 F.2d at 1527; *Sara Lee Corp.,* 81 F.3d at 463-64.

Before proceeding to apply these factors, it is important to note that the current action involves both an appeal of the TTAB's finding of priority, which in turn impacts its registrability determination pursuant to § 1071(b), and a related unfair competition claim under 15 U.S.C. §

1125(a), which is predicated on a theory that consumers will likely be confused as to the source of

the goods sold under the DGSL mark.  Under such circumstances, the Fourth Circuit has held that:

> "[A]lthough the same likelihood-of-confusion standard applies to both registration and infringement," *see B & B Hardware*, 135 S. Ct. at 1306, the standard is applied differently to an infringement claim.  In a trademark infringement claim, the focus of the likelihood of confusion inquiry is whether "the defendant's *actual practice* is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) (emphasis added).  In sharp contrast, the issue at the heart of a registrability determination is whether a mark, as delimited in the application, is registrable.  *See Octocom Sys., Inc. v. Houston Computer Servs., Inc.*, 918 F.2d 937, 942 (Fed. Cir. 1990) ("The issue in [a registration] opposition is the right of an applicant to register the mark depicted in the application for the goods identified therein.").  In short, when a case involves *only* an appeal of the TTAB's registrability determination pursuant to § 1071(b) and not also an infringement claim, it makes little sense to consider actual use of the mark, for the reasons already stated (emphasis added)."

> *Combe Inc. v. Dr. Aug. Wolff GmBH & Co. KG Arzneimittel*, 382 F. Supp. 3d 429, 446 (E.D. Va. 2019), *aff'd,* 851 F. App'x 357 (4th Cir. 2021).

Here, because the case involves both an appeal of the TTAB decision as to priority and

new claims for both federal and common law unfair competition, the undersigned will consider

the actual use of the mark to evaluate the unfair competition claims.  As noted above, the TTAB

never reached a decision as to registrability because it found that plaintiff did not have priority.

As discussed in greater detail below, the parties' marks share an identical and fanciful

dominant word, the parties use the mark in connection with the marketing and sale of identical

goods, the parties use similar e-commerce platforms, and the parties compete in the same industry.

These facts alone strongly suggest the likelihood of confusion to the consumer as to which

company is associated with the DGSL mark.  *See Dewberry Engineers Inc. v. Dewberry Group,

Inc.*, Nos. 22-1622, 22-1845, 2023 WL 5062022, at *8-14 (4th Cir. Aug. 9, 2023), *Pizzeria Uno

Corp*, 747 F.2d at 1530.

28

*i. The Strength or Distinctiveness of Plaintiff's DGSL Mark*

The strength or distinctiveness of the mark is "the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." *Carefirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006). The "strength" of the trademark is evaluated in terms of its (1) conceptual strength and (2) commercial strength. *Id*. Measuring a mark's "conceptual strength or inherent strength focuses on the linguistic or graphical 'peculiarity' of the mark, considered in relation to the product, service or collective organization to which the mark attaches." *See Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d at 747); *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). To guide the court's analysis, the Fourth Circuit classifies marks as (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *See Pizzeria Uno Corp.*, 747 F.2d at 1527, *Swatch, S.A.*, 888 F. Supp. 2d. at 748. Under this "hierarchy of distinction," generic marks receive no protection, descriptive marks require proof of a secondary meaning to be eligible for protection, while suggestive and arbitrary or fanciful marks are inherently distinctive. *See Sara Lee*, 81 F.3d at 464.

Here, plaintiff's DGSL mark is linguistically unique, has no inherent meaning, and is therefore conceptually distinct. While the record is silent on whether the term DGSL is an abbreviation or acronym, regardless, the term DGSL cannot be considered generic or descriptive in the context of the unique products sold by the parties, namely weatherstrippings, rubber installations, rubber seals, and tapes. (Compl. ¶ 16). In contrast, the term DGSL is a fanciful description of plaintiff's products, meaning plaintiff's DGSL mark is inherently distinctive under the Fourth Circuit's classification process.

The second step in the strength analysis considers the commercial strength of a mark. The commercial strength inquiry looks to the marketplace and asks, "if in fact a substantial number of

present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *Perini Corp.,* 915 F.2d at 124; *Swatch, S.A.*, 888 F. Supp. 2d. at 748 (quoting *Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156, 160-61 (4th Cir 1962)).  The complaint reflects that plaintiff's DGSL mark is well-known within the tools and home improvement products category, specifically weatherstrippings, rubber installations, rubber seals and tapes.  (Compl. ¶ 16).  The DGSL mark has been used by plaintiff in connection with plaintiff's products since at least as early as 2018, and "has achieved great commercial success through her use of [the mark], fulfilling thousands of orders nationwide," and has "garnered significant consumer recognition on amazon.com and substantial goodwill nationwide." (Compl. ¶ 22-29).  Plaintiff has created more than 50 Amazon product listing pages via plaintiff's Amazon stores and has specifically identified DGSL as the brand name of plaintiff's products.  (Compl. ¶ 24-25).  Plaintiff's garage door seal and weatherstripping products bearing the DGSL mark are also first in sales on amazon.com in the "Weatherproofing Garage Door Seals" category and ranked 1,406 in the general "Tools & Home Improvement" category.  (Compl. ¶ 29).  Further, plaintiff has "invested a substantial amount of money in direct-to-consumer online advertising campaigns to promote her DGSL-branded products on amazon.com.  (Compl. ¶ 26).  The record reflects and it is reasonable to conclude that plaintiff's DGSL mark is associated with plaintiff's business, which further highlights the commercial strength of plaintiff's mark.

For these reasons, the undersigned finds plaintiff's DGSL mark to be strong and highly distinctive.

### ii. The Similarity of the Two Marks to Consumers

In assessing the similarity of the marks under the second factor, courts examine the "allegedly infringing use in the context in which it is seen by the ordinary consumer." *Anheuser-*

30

*Busch, Inc,* 962 F.2d at 320.  Here, the DGSL marks, as seen by the ordinary consumer in the relevant marketplace, are identical.  *See Carefirst of Maryland*, 434 F.3d at 271 ("because the likelihood-of-confusion analysis looks to the actual use of competing marks, a comparison of the texts of the two marks alone is insufficient if the marks have different appearances in the marketplace").  Both plaintiff and defendant use the identical word mark DGSL, without any design or other descriptive material, in connection with identical goods.  Therefore, in this context defendant's use of plaintiff's DGSL mark would likely cause the ordinary consumer within the tools and home improvement industry to confuse plaintiff's DGSL-branded goods with defendant's DGSL-branded goods.

iii.  *The Similarity of the Goods that the Marks Identify*

In assessing the similarity of the goods identified by the marks, the goods in question "need not be identical or in direct competition with each other." *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 397 (4th Cir. 2009).  Here, however, plaintiff and defendant advertise, market, promote, and otherwise use the DGSL mark in connection with nearly identical products.  (Compl. ¶ 1-3, 16-31, 59; Mem. Supp. Default J., at 15).  Therefore, the parties are competing to provide essentially the same goods to the same consumer base with identical DGSL marks.  This factor weighs significantly in favor a finding of likelihood of confusion.

iv.  *Similarity of the Facilities Used and Similarity of Advertising by the Markholders*

The fourth and fifth factors examine the similarity of the facilities used by the parties and the similarity of their advertising.  The record reflects that the plaintiff advertises and sells her DGSL-branded products through online marketplaces and e-commerce platforms, such as amazon.com.  (Compl. ¶ 16, 20-26).  The record further reflects that defendant advertises and/or sells its DGSL-branded products through similar e-commerce platforms, including aliexpress.com

and bowsen.net.  (Compl. ¶ 34-38; Mem. Supp. Default J., at 15).  This supports plaintiff's claim that the parties "share similar trade channels" and compete in a similar manner in overlapping online markets.  (*See* Compl. ¶ ¶ 16-48; Mem. Supp. Default J., at 15).[9]  Thus, factors four and five support a finding of likelihood of confusion.

*v. Defendant's Intent*

The sixth factor focuses on "whether the junior user intended to capitalize on the good will associated with the senior user's mark."  *See Combe Inc. v. Dr. August Wolff GmBH & Co. KG Arzneimittel*, 382 F. Supp. 3d 429, 460 (E.D. Va. 2019).   The Fourth Circuit has held that a good faith belief that a subsequently adopted mark will not lead to confusion is no defense if a court finds actual or likelihood of confusion.  *Id.* (citing *Pizzeria Uno*, 747 F.2d at 1535) (internal quotation omitted).  Here, the undersigned has found that plaintiff was the first party to use the unique DGSL mark to sell specific types of products, and thereafter defendant attempted to appropriate the mark to sell the same or similar products.  In addition, the undersigned has found that defendant submitted fabricated documents and made implausible arguments in support of its trademark application.  These facts, when viewed together, support the conclusion that defendant acted with a premeditated intent to misuse plaintiff's mark in order to confuse consumers.  Thus, the Court finds that this factor weighs in favor of likelihood of confusion.

*vii. Actual Confusion, the Quality of the Defendant's Product, and the Sophistication of the Consuming Public are Not Relevant*

Finally, the record is mostly devoid of any allegations regarding whether there has been actual confusion, the quality of defendant's product, or the sophistication of the consuming public.

---

[9] To be clear, the record sufficiently establishes that defendant used the bowsen.net website for commercial purposes.  This finding is separate from the undersigned's previous finding that defendant falsely represented when it first used the bowsen.net website, which was relevant only to the issue of priority.

As to factor seven, while "the absence of any evidence of actual confusion over a substantial period of time . . . creates a strong inference that there is no likelihood of confusion," *CareFirst*, 434 F.3d at 269, the undersigned will decline to assign any weight to the seventh factor as it is unclear whether there has been any actual confusion or whether defendant has even been selling products under its DGSL mark for a substantial amount of time—or any amount of time—given plaintiff's claims of defendant fabricating the bowsen.com website and accompanying invoices.

Factor eight, the quality of the defendant's product, "is most appropriate in situations involving the production of cheap copies or knockoffs of a competitor's trademark-protected goods*." Sara Lee Corp. v. Kayser–Roth Corp*., 81 F.3d 455, 467 (4th Cir. 1996). Plaintiff has not plead any facts related to defendant's quality of goods or whether defendant's goods are inferior to plaintiffs.

"As for factor nine, in the typical case, buyer sophistication is only considered when the relevant market is not the public at-large." *Swatch AG*, 739 F.3d at 159 (citing *Sara Lee Corp*. 81 F.3d at 467) (internal quotation omitted). Here, the record reflects the relevant market is the public at-large. Thus, the undersigned will also decline to analyze the eighth and ninth factors.

*viii. Conclusion*

For these reasons, the undersigned finds that the well-pleaded allegations of facts set forth in the plaintiff's complaint establish that defendant's use of the DGSL mark is likely to cause confusion among consumers under 15 U.S.C. § 1125(a). The undersigned further finds that plaintiff has satisfied elements of unfair competition under the Lanham Act and recommends the court grant default judgment against defendant with respect to this claim.

**Virginia Common Law Trademark Infringement and Unfair Competition**
**(Third and Fourth Claims)**

Plaintiff's third and fourth claims for relief allege trademark infringement and unfair

competition under Virginia common law.  Importantly, plaintiff does not bring a statutory cause of action for trademark infringement under Virginia Code § 59.1-92.12, which creates liability for using a *registered* trademark without the consent of the owner.  In Virginia, common law causes of action for trademark infringement and unfair competition share common elements and therefore require the same FRCP 12(b)(6) analysis. *Swatch AG*, 739 F.3d at 162.  Due to the overlapping nature of common law infringement and unfair competition claims, courts in Virginia generally do not draw a distinction between these two causes of action. *Id*.  Therefore, the undersigned will combine plaintiff's third and fourth claims and consider them as one claim of unfair competition under Virginia common law.

Plaintiff's unfair competition claim under Virginia common law also mirrors plaintiff's claim for relief under the Lanham Act and courts typically analyze such claims concurrently. *Synergistic Intern., LLC*, 470 F.3d at 170, n.9 (4th Cir. 2006) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)).  In fact, "[u]nder Virginia law, a claim for unfair competition is essentially identical to the elements of the same claim under the Lanham Act." *Nationstar Mortg., LLC*, 155 F. Supp. 3d at 592; *see also Lamparello v. Falwell*, 420 F.3d 309, 312 n.1 (4th Cir. 2005) ("[A plaintiff's] state-law unfair competition claim rises or falls with [its] federal claims of infringement and false designation of origin."); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved.").

The undersigned applied the allegations in the complaint to the elements of unfair competition under the Lanham Act *supra*, finding plaintiff had put forth sufficient facts to plead a

34

likelihood of confusion.  Applying the same analysis here, the undersigned finds that plaintiff has sufficiently pleaded a valid, protectable trademark and a likelihood of confusion among consumers, and therefore recommends the court grant default judgment against defendant on the unfair competition claim under Virginia common law.

### Declaratory Judgment under 28 U.S.C. § 2201
### (Fifth Claim)

Plaintiff seeks a declaratory judgment affirming that (1) plaintiff owns nationwide common law trademark rights in the word mark DGSL in connection with plaintiff's products from at least as early as October 23, 2018; (2) defendant's use and application to register the DGSL mark in connection with defendant's goods infringe upon plaintiff's DGSL mark and constitute unfair competition and false designation of goods under 15 U.S.C. § 1125(a); and (3) defendant's use of the mark in connection with defendant's goods infringe upon plaintiff's DGSL mark and constitutes unfair competition under the common law of Virginia.  (Compl., at 13-14, Prayer for Relief (2)-(5)).

The Declaratory Judgment Act authorizes a federal district court to "declare the rights and other legal relations of any interested party," when the court has "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a).  As noted above, the evidence establishes that plaintiff has nationwide common law trademark rights in the word mark DGSL in connection with plaintiff's products from at least as early as December 4, 2018 when she made her first sale of goods on amazon.com, and that defendant's use and application to register the DGSL mark would constitute federal unfair competition pursuant to 15 U.S.C. § 1125(a) and Virginia common law unfair competition.  For these reasons, the undersigned recommends a finding that plaintiff has properly alleged a "case of actual controversy" and is entitled to a declaratory judgment on these issues.

## **REQUESTED RELIEF**

Plaintiff's complaint seeks the following relief: (1) an order reversing and vacating the Board's final decision in *Feng Xiaomei v. Kaiping MAFA Trading Co, Ltd.*, Opp. No. 91267993 (T.T.A.B. Dec. 29, 2022); (2) a permanent injunction and order directing defendant to destroy products with plaintiff's DGSL mark; (3) a declaratory judgment affirming that plaintiff owns nationwide common law rights in the DGSL mark and further declaring that defendant's use and application to register the DGSL mark would infringe on plaintiff's DGSL mark under federal and Virginia common law principles of unfair competition; (4) recovery of defendant's profits; and (5) attorney's fees and costs.  (Compl. Prayer for Relief, at 14-16).

### A.  Reversal and Vacatur of the Board's Final Decision

Given the finding that plaintiff has priority in the DGSL mark and defendant's DGSL mark is likely to cause confusion with plaintiff's DGSL mark, the undersigned recommends the court reverse and vacate the Board's final decision in *Feng Xiaomei v. Kaiping MAFA Trading Co, Ltd.*, Opp. No. 91267993 (T.T.A.B. Dec. 29, 2022).  In her prayer for relief, plaintiff does not request the court to grant her registration over the DGSL mark, even though the court has authority to do so.  *Apple, Inc. v. Cao*, No. 1:21CV1003 (TSE/JFA), 2022 WL 18781189, at *3 (E.D. Va. Jan. 14, 2022) (citing *Swatch AG*, 739 F.3d at 155) ("The district court has authority independent of the PTO to grant or cancel registrations and to decide any related matters such as infringement and unfair competition claims.).  Therefore, the undersigned recommends the court reverse and vacate the Board's final decision and remand the issue of registration back to the TTAB for further proceedings consistent with the court's order.

## B. Permanent Injunction

The Lanham Act empowers courts "to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable, to prevent" trademark infringement.  15 U.S.C. § 1116(a).  In fact, the Fourth Circuit has held that an injunction is "the preferred remedy" for such infringement.  *Dewberry Engineers Inc.,* Nos. 22-1622, 22-1845, 2023 WL 5062022, at *14 (4th Cir. Aug. 9, 2023), quoting *Lonestar Steakhouse*, 43 F.3d at 939.

To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Here, plaintiff seeks the entry of a permanent injunction against defendant, together with its employees, agents, partners, officers, directors, owners, shareholders, members, principals, subsidiaries, affiliates, branches, and all persons in active concert or participation with any of them, from the following acts:

a.  Using, registering, seeking to register the DGSL mark in any form and from using any other marks, logos, designs, designations, product titles, or indicators that are confusingly similar to and/or dilutive of plaintiff's DGSL mark;

b.  Representing by any means whatsoever, directly or indirectly, that defendant, any products or services offered by defendant, or any activities undertaken by defendant is/are associated or connected in any way with plaintiff or sponsored by or affiliated with plaintiff in any way;

c.  Using any online marketplace such as bowsen.net, aliexpress.com, and amazon.com for the promotion, advertisement, distribution, offering for sale, or sale of goods in connection with the DGSL mark;

d.  Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to above.

(Compl. Prayer for Relief, at 15;Mot. Default., at Dkt. 16-1).

The undersigned recommends that a permanent injunction as requested by plaintiff is appropriate.  All four elements of the Fourth Circuit test for a permanent injunction are satisfied. First, plaintiff suffered and continues to suffer irreparable harm due to defendant's infringing conduct.  As noted herein, the record establishes that defendant has infringed upon plaintiff's DGSL mark by creating a likelihood of confusion in the marketplace.  Specifically, defendant publicly lists for sale competing goods under the DGSL mark on aliexpress.com and bowsen.net. Defendant's infringing conduct prevents plaintiff from having the ability to control the reputation of its DGSL mark and associated products, as well as profit from the goodwill associated with her mark.  Indeed, the Fourth Circuit has held that with respect to trademark infringement, "[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir. 1995) (citation omitted).

Second, other remedies available at law are inadequate to compensate plaintiff.  Here, plaintiff brought this civil action after the TTAB issued its final decision dismissing plaintiff's opposition to defendant's pending application.  However, defendant has failed to appear after properly being served with process.  Defendant's refusal to participate in this suit shows a threat of continued infringement, as well as a likely lack of cooperation, unless the court acts to enjoin

defendant's infringing conduct. *See, e.g., Overstock.com, Inc. v. Visocky*, Civil No. 1:17-cv-1331 (LMB/TCB), 2018 WL 5075511 (E.D. Va. Aug. 23, 2018).

Third, the only hardship that would befall defendant by granting plaintiff's requested permanent injunction would be the requirement to follow established trademark law. Therefore, the balance of hardships weighs soundly in plaintiff's favor.

Fourth, and finally, the public interest favors an injunction. An injunction would prevent consumer confusion by the trademark infringement undertaken by the defendant. An injunction would also preserve the integrity of plaintiff's DGSL mark.

Therefore, the undersigned recommends that the court grant plaintiff's request for injunctive relief.

### C.  Declaratory Judgment

For the reasons stated above, the undersigned recommends that the court grant plaintiff's request for a declaratory judgment affirming that (1) plaintiff owns nationwide common law trademark rights in the word mark DGSL in connection with plaintiff's products from at least as early as December 4, 2018; (2) defendant's use and application to register the DGSL mark in connection with defendant's goods infringe upon plaintiff's DGSL mark and constitute unfair competition and false designation of goods under 15 U.S.C. § 1125(a); and (3) defendant's use of the mark in connection with defendant's goods infringe upon plaintiff's DGSL mark and constitutes unfair competition under the common law of Virginia.

### D.  Recovery of Profits

Under the Lanham Act, where a trademark infringement violation has been established under Section 1125(a), the plaintiff is entitled to recover the defendant's profits. 15 U.S.C. § 1117(a). It is the court's role to "assess" a defendant's profits with respect to a plaintiff's recovery

under the Lanham Act. 15 U.S.C. § 1117(a).  "In assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.*  "The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." *Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 941 (E.D. Va. Nov. 22, 2011) (quoting *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989)).

In her complaint, plaintiff seeks recovery of defendant's profits pursuant to  15 U.S.C. § 1117 (Compl. Prayer for Relief, at 16), but in her motion for default judgment plaintiff states she is no longer seeking monetary damages (Mem. Supp. Default J., at 20).  Moreover, neither the complaint nor the motion for default judgment, or any attached affidavit, puts forth any evidence of defendant's profits.  Accordingly, the undersigned recommends the court deem plaintiff's request to recover defendant's profits to be withdrawn.

### E.  Attorneys' Fees and Costs

In her prayer for relief, plaintiff requested the court award reasonable attorney's fees and costs.  (Compl. Prayer for Relief, at 16).  In order to conduct a proper evaluation of plaintiff's fees and costs, plaintiff must state with particularity in an affidavit the costs, attorneys' hours worked, the billing rates of the attorneys involved, and why the rates, fees and costs are reasonable. *See Dewberry Engineers*, *Inc. v. Dewberry Grp., Inc.*, No. 1:20-cv-00610, 2022 WL 1439826, at *14 (E.D. Va. Mar. 2, 2022).  Plaintiff's memorandum in support of its motion for default judgment, and attached affidavits, are silent on the issue of attorney's fees and costs and do not provide any facts to establish the amount of fees paid to its attorneys or the costs associated with bringing this action.  Accordingly, the undersigned recommends plaintiff's request for reasonable attorney's fees and costs be denied.

## RECOMMENDATION

For the reasons outlined above, the undersigned United States magistrate judge recommends that plaintiff's motion for default judgment be **GRANTED**.  Specifically, the undersigned

**RECOMMENDS** the court **GRANT** default judgment as to defendant Kaiping Mafa Trading Co., Ltd on all counts; and further

**RECOMMENDS** that the Court **REVERSE** and **VACATE** the TTAB decision in *Feng Xiaomei v. Kaiping MAFA Trading Co, Ltd*., Opp. No. 91267993 (T.T.A.B. Dec. 29, 2022) and enter an order finding that plaintiff is the senior user and owns prior rights in the DGSL mark, that defendant's DGSL mark is likely to cause confusion under 15 U.S.C. § 1125(a) with plaintiff's DGSL mark, and remand the issue of registration back to the TTAB for further proceedings consistent with the court's order; and further

**RECOMMENDS** that the court **GRANT** plaintiff permanent injunctive relief against defendant, together with its employees, agents, partners, officers, directors, owners, shareholders, members, principals, subsidiaries, affiliates, branches, and all persons in active concert or participation with any of them, and enjoin them from the following acts:

a.  Using, registering, seeking to register the DGSL mark in any form and from using any other marks, logos, designs, designations, product titles, or indicators that are confusingly similar to and/or dilutive of plaintiff's DGSL mark;

b.  Representing by any means whatsoever, directly or indirectly, that defendant, any products or services offered by defendant, or any activities undertaken by defendant is/are associated or connected in any way with plaintiff or sponsored by or affiliated with plaintiff in any way;

c.  Using any online marketplace such as bowsen.net, aliexpress.com, and amazon.com for

the promotion, advertisement, distribution, offering for sale, or sale of goods in connection

with the DGSL mark;[10]

d.  Assisting, aiding, or abetting any other person or entity in engaging in or performing

any of the activities referred to in subparagraphs (a)-(c) above; and further

**RECOMMENDS** that the court **GRANT** plaintiff declaratory judgment, declaring the

following:

a.  Plaintiff owns nationwide common law trademark rights in plaintiff's DGSL mark in

connection with "raw or semi-worked rubber; rubber tubes and pipes; sealing and

insulating materials; self-adhesive tapes, other than stationery and not for medical or

household purposes; weatherstripping for use in automobiles, homes" in International

Class 17 since at least as early as its date of first use in commerce, December 4, 2018;

b.  Defendant's use and application to register the word mark DGSL in connection with the

goods identified on U.S. Trademark Application Serial No. 90/173,270 infringe upon

plaintiff's DGSL mark and constitute unfair competition and false designation of goods

under 15 U.S.C. § 1125(a);

c.  Defendant's use of the word mark DGSL in connection with the goods identified on

U.S. Trademark Application Serial No. 90/173,270 infringe upon plaintiff's DGSL mark

and constitute trademark infringement and unfair competition under the common law of

Virginia; and further

---

[10]  Plaintiff did not request this specific provision in either the complaint or the motion for default judgment.  This specific request is found only in plaintiff's proposed order granting the default judgment.  However, this term falls squarely within the scope of a properly tailored permanent injunction, and therefore the undersigned recommends its inclusion.

**RECOMMENDS** that the court find plaintiff's request to recover defendant's profits to be **WITHDRAWN**; and further

**RECOMMENDS** that the court **DENY** plaintiff's request for attorneys' fees and costs.

### NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to file timely objections waives appellate review of the substance of these proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on these proposed findings of fact and recommendations.

The Clerk is directed to send a copy of this Report and Recommendation to defendant Kaiping Mafa Trading Co., Ltd. by e-mail and first-class mail at the following addresses:

(1) c/o Haoyi Chen, Esquire at the following email addresses:

haoyichen@archlakelaw.com,

tmproce@scienbizip.com, and

ecptm@scienbizip.com;

(2) c/o Haoyo Chen, Esquire by first-class mail at the following addresses:

Arch & Lake, LLP 203 N LaSalle Street Suite 2100 Chicago, IL, 60601; and

Arch & Lake, LLP 2500 Wilcrest Suite 301 Houston, TX, 77042; and

(3) c/o Jinli Zhong at the following email address: 125611768@qq.com.

*William E. Fitzpatrick*

WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

November 7, 2023
Alexandria, Virginia